## CLARK *v.* METROPOLITAN LIFE INSURANCE CO.

LIFE INSURANCE—LAPSED POLICY—REVIVAL.

The mere deposit of money with the local agent of a life-insurance company, to be applied to the payment of premiums on a lapsed policy in case an application for its revival should be approved at the home office, which, by express stipulation, alone has authority to revive policies, is insufficient to effect a revival of the policy.

Error to Wayne; Carpenter, J. Submitted October 23, 1895. Decided November 26, 1895.

*Assumpsit* by Catharine Clark against the Metropolitan Life Insurance Company on life-insurance policies. From a judgment for plaintiff, defendant brings error. Reversed.

*Haug & Yerkes,* for appellant.

*George W. Coomer* and *Atkinson & Atkinson,* for appellee.

LONG, J. The plaintiff is the beneficiary in three policies issued by the defendant upon the life of her mother. The premiums were paid weekly, amounting to 25 cents per week, and such payments were kept up until the latter part of December, 1893, when the policies were permitted to lapse. On January 3, 1894, plaintiff made written applications for their revival. These applications were made to the agent of the company at Detroit, and by him forwarded to the main office of the company at New York City, with the plaintiff's lapsed policies. Plaintiff paid no money at the time of making the applications for revival, but a few days afterwards came to Detroit from Wyandotte, where she lived, and paid the agent two dollars. She does not claim a receipt was given her for this, but states that she knew at the time that the policies had lapsed. The plaintiff was then asked:

"When did you come back to see Mr. Heathcote or any of these people connected with the Metropolitan Life Insurance Company, or did you ever come back?

"*A.* Yes; I went once after I paid the two dollars. I don't remember just what day it was.

"*Q.* Whom did you see at that time at the office?

"*A.* Well, there was a man there.

"*Q.* Did you pay him anything?

"*A.* I think I paid him 50 cents."

Plaintiff further testified that she took no receipt, but that this man in the office put it down in a book,

107 MICH.— 11

and that this was on the day of her mother's death, January 11, 1894. The book referred to was the one upon which the payments were entered from week to week under these policies, and was left by the plaintiff, at the time the two dollars was paid, with the company's agent at Detroit. The 50 cents is entered upon this book as of January 11, 1894. The book was returned to her, with revival of the policies, on January 29, 1894.

The only question which the court submitted to the jury was whether, at the time this 50 cents was paid, it was intended as a revival of the policies; that is, whether the plaintiff paid it, and the defendant received it, in recognition that the policies were revived. The jury returned a verdict in favor of the plaintiff for the amount of the policies.

It is contended on the part of the defendant that there is no evidence or circumstances which tend to show that the company intended to revive in any other way than under the revival applications made and signed by the plaintiff on January 3, 1894; and that the moneys for the revival were never sent to the home office, but remained in the agent's hands during the process of the revival. The testimony shows that the home office alone could revive policies. The plaintiff knew, when she deposited the money, that it would be returned to her if the policies were not revived; and nowhere in her testimony does she state that she thought the policies had been revived because she deposited the 50 cents, which the company received conditionally to be applied if the home office indorsed the revival upon them. There is no evidence in the case, it seems to us, which shows that, because the 50 cents was deposited, the company intended to treat them as valid and existing contracts. The plaintiff knew that the policies must go forward to the home office in New York to have this indorsement made, and that, if it were not made there, they could not be revived; and she expressly stipulated in her application for revival that—

"No liability exists on the part of the company until said company, at its home office in New York City, shall have approved this application for revival, and that said policy shall not be in force until the fact of its official revival shall be indorsed upon it by the secretary of the company at its home office in New York City, and shall be delivered to the applicant so indorsed; nor shall said policy then be in force unless, at the time of its delivery as aforesaid, the insured shall be alive and in sound health."

By this stipulation in the application for revival, actual revival would not be consummated until the policies, with the indorsement of the company, were received back by the plaintiff, and then only under the conditions contemplated by the company. It is therefore certain that, at the time the 50 cents was paid, the parties could not have contemplated that that payment should operate as a revival. The policies, with indorsements of revival, were received back January 29th, but the insured had died on January 11th, and hence, under the stipulation for revival, they had no force.

We think there was nothing to submit to the jury, and the judgment must be reversed, and no new trial ordered.

The other Justices concurred.